FILED

1 | PAUL B. BLATZ (SBN 159448)
THE BLATZ, LAW FIRM
2 | 206 N. Signal Street, Suite G
Ojai, California 93023
3 | Telephone: (805) 646-3310  FAX: (805) 640-104

2008 MAY -5  PM 2: 33

CLERK U.S. DISTRICT COURT
CENTRAL DIST. C CALIF.
LOS ANGELES

4 | Attorney for Plaintiff, DAVID P. LINDSAY

BY _____

5

6

7

8

UNITED STATES DISTRICT COURT

9 | FOR THE CENTRAL DISTRICT OF CALIFORNIA / WESTERN DIVISION

10

RGK

11

12 | DAVID P. LINDSAY, an individual,

Case No.: **CV08 - 02925** (JCx)

13 |                         Plaintiff,

VERIFIED COMPLAINT FOR CIVIL
DAMAGES

vs.

14 | CITY OF SANTA PAULA, a Public
Entity pursuant to California Law;
15 | Daniel Kiernan, individually and in his
representative capacity as a police
16 | officer; Sgt. James Fogata, individually
and in his representative capacity as a
17 | police officer; Police Officer W.
Harper, individually and in his
18 | representative capacity as a police
officer; Police Officer Mark Cagnacci,
19 | individually and in his representative
capacity as a police officer; Police
20 | Officer Dave Grove, individually and in
his representative capacity as a police
21 | officer; Police Officer Curran,
individually and in his representative
22 | capacity as a police officer; Police
Officer Shilo, individually and in his
23 | representative capacity as a police
officer; ; Police Officer Matt Gillio,
24 | individually and in his representative
capacity as a police officer and DOES 1
25 | through 20, inclusive,
                         Defendants.

1. VIOLATION OF CIVIL RIGHTS
PURSUANT TO 42 U.S.C. 1983

2. VIOLATION OF CIVIL RIGHTS
PURSUANT TO CALIFORNIA
CONSTITUTION ARTICLE 1
SECTION 1 and SECTION 13

3. ASSAULT AND BATTERY

4. NEGLIGENCE

28 USC §1331
28 USC §1367 (a)

26

27

28

1.

**VERIFIED COMPLAINT FOR CIVIL DAMAGES**

**TO THE Defendants AND EACH OF THEM AND TO ALL INTERESTED PARTIES:**

**COMES NOW PLAINTIFF DAVID P. LINDSAY** and alleges as follows:

## I.
## STATEMENT OF JURISDICTION

1.  This action arises under the Constitution of the United States of America, Amendments Four, Five, Six and Fourteen and under the Statutes of the United States of America (Title 42 <u>United States Code</u>, §1983) as well as such other Statutes as are herein after identified and applicable.

2.  The amount in controversy, exclusive of costs fees and interest, exceeds the sum of $75,000.00.

3.  The United States District Court has jurisdiction under Title28 United States Code, §1331 as this case presents a <u>Federal Question</u>.

4.  This action also arises under the Constitution and Statutes of the State of California, as hereafter set forth, and the United States District Court has concurrent jurisdiction over the <u>State Question</u> pursuant to Title 28, United States Code, Section 1367(a).

## II.
## STATEMENT OF INTERESTED PARTIES

5.  Plaintiff DAVID P. LINDSAY (hereafter "Lindsay") was born in the United States, a citizen of the United States, and during those times relevant to this lawsuit was subject to the Laws and Constitution of the United States and the State of California and was entitled to all the protections, privileges and immunities of every other citizen of the United States and the State of California.

6. THE CITY OF SANTA PAULA (hereafter "Santa Paula") is and at all times relevant herein was a Public Entity organized and existing pursuant to the Laws of the State of California and was engaged in the activities of a Municipality in California, including the deployment and control of a Police Force and having a primary place of business at located at 970 E. Ventura Street, Santa Paula, California 93060 .

7. Police Officer Daniel Kiernan, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Kierman") has an office located at 214 10th Street, Santa Paula, California 93060, and was acting in his official capacity and under color of law or in his individual capacity.

8. Police Sgt. James Fogata, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Fogata") has an office located at 214 10th Street, Santa Paula, California 93060, and was acting in his official capacity and under color of law or in his individual capacity.

9. Police Officer W. [first name presently unknown] Harper, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Harper") has an office located at 214 10th Street, Santa Paula, California 93060, and was acting in his official capacity and under color of law or in his individual capacity.

10. Police Officer Mark Cagnacci, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Cagnacci") has an office located at 214 10th Street, Santa Paula, California 93060, and was acting in his official capacity and under color of law or in his individual capacity.

11. Police Officer David Grove, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Grove") has an office located at 214 10th Street, Santa Paula, California 93060, and at all times relevant herein was acting in his official capacity and under color of law.

12. Police Officer [first name presently unknown] Curran, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Curran") has a business located at 214 10th Street, Santa Paula, California 93060, and was acting in his official capacity and under color of law or in his individual capacity.

13. Police Officer [first name presently unknown] Shilo, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Shilo") has a business located at 214 10th Street, Santa Paula, California 93060, and was acting in his official capacity and under color of law or in his individual capacity.

14. Police Officer Matt Gillio, both individually and in his representative capacity as a police officer in and for the City of Santa Paula (hereafter "Gillio") has a business located at 214 10th Street, Santa Paula, California 93060, and was acting in his official capacity and under color of law or in his individual capacity.

15. All Officers listed above will hereafter be "Police Officers" when referred to collectively and in each case are sued in both their individual capacity and in their representative capacity as police officers of the City of Santa Paula and as individuals unless otherwise indicated.

16. Lindsay is informed and believes and thereon alleges that each of the Defendants named herein was at all times relevant herein an agent and/or employee of each of the other Defendants and in doing all those things hereinafter alleged was acting within the course and scope of such agency with the approval and under the direction of and in furtherance of said employment and/or agency, and did at those times relevant herein intentionally do those things alleged herein in violation of the Constitutional and Statutory rights of Lindsay with knowledge of the violations and with an intent to do such violations.

17. Lindsay is further informed and believes and thereon alleges that the several Police Officers, named herein, were at all times and all places relevant herein,

and to the present time, part of a single public entity and have such a commonality of interest as to make the acts of one the acts of all.

18.   Lindsay is ignorant of the true names, capacities and identities of those Defendants named and sued herein as DOE and, as such, sues said Defendants in that capacity but will seek leave to amend this complaint when the true identities of those Defendants become known to him.

19.   Lindsay is informed and believes and thereon alleges that each Defendant named herein as DOE was an agent and/or employee of each of the other Defendants and was acting in the capacity of such employment and/or agency in doing those things herein alleged and in furtherance of Santa Paula's policies and practices in the use of excessive force in effecting arrests.

## III.
## GENERAL ALLEGATIONS

20.   Lindsay is a citizen of the United States and entitled to equal protection and due process before being subjected to punishment, particularly punishment that constitutes cruelty and unjustified and unjustifiable application of force applied to his person as such rights are applicable to him pursuant to the Fifth, and Fourteenth Amendments to the Constitution of the United States of America.

21.   Lindsay is informed and believes and thereon alleges that he was deprived of his rights as those rights are set forth in the California Constitution at Article 1, Section 1, to wit: "*All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.*"

22.   On or about December 10, 2006, Lindsay was shopping at a convenience store on Harvard Blvd. in Santa Paula after attending his sister's wedding where the clerk refused Lindsay service.  After offering to pay for the purchases of other customers, Lindsay left the store and returned to the taxi he had previously arrived in.

23. Police arrived, entered the convenience store, and then quickly swarmed the taxi occupied by Lindsay as it was leaving the area. Lindsay exited and a discussion ensued. When Police advised Lindsay of the allegations against him, Lindsay insisted that they all return to the store and clear the matter up with the store clerk. Lindsay was not arrested at this time nor did he have any reason to believe he was under arrest, and he had done nothing violent or criminal that would warrant arrest. Lindsay then began to move toward the store when the Taser was administered to his back.

24. Lindsay was denied the aforesaid rights by Santa Paula and its Police Officers in that they used the force of a Taser without any reasonable belief that such force was necessary and in direct contradiction to the Santa Paula Police Department General Order Number 8-8 titled "Use of an Electronic Control Device (Taser)." See Exhibit "A" attached hereto. [Plaintiff will hereafter refer to the aforesaid General Order as "General Order #8-8"] Then after subduing Lindsay and while Lindsay was incapacitated and laying in water in proximity to flammable liquids and gases, they applied a second electrical shock by means of a Taser to his person when there was no reasonable cause to use such force.

25. Lindsay was deprived of his rights as those rights are set forth in the California Constitution at Article 1, Section 13, to wit: "*The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized.*"

26. Prior to the ***first*** use of the Taser, Lindsay had not committed or threatened to commit any violent act or crime, and there was no reasonable belief that Lindsay posed a sufficient threat to warrant the level of force of a Taser. At the time of the ***second*** use of the Taser, Lindsay was still incapacitated from the first Tasering and was laying on wet concrete within 5-10 feet of a functional gas pump, thus causing great danger to Lindsay and others, and revealing a malicious intent in the Police Officers to cause injury to Lindsay

1       through their despicable conduct and a willful and conscious disregard for the

2       rights and safety of Lindsay and others.

3   27.   Lindsay was deprived of his State and Federal Constitutional Rights in that

         there was an unreasonable use of force to such a degree that the force was

4        excessive and unnecessary.

5   28.   Against the direct prohibitions of aforesaid General Order #8-8, the Taser was

6        used on Lindsay to coerce and intimidate him as evidenced by Officer Kirnan's

7        verbal threat to use the Taser and Lindsay yielded to Police Officers.

8   29.   Furthermore, and also against the direct prohibitions of the aforesaid General

         Order #8-8, the Taser was used on Lindsay while he was intoxicated.

9   30.   Additionally, and also against the direct prohibitions of the aforesaid General

10       Order #8-8, the Taser was used on Lindsay in an area where there is a known

11       presence of flammable liquids or gases in that Lindsay was in a gas station

12       where active gas pumps were dispensing or able to dispense gasoline.

13  31.   The Police Officers knew or should have known that flammable liquids and

         gases are commonly present near gas pumps such as those which were in clear

14       view and very near to Lindsay.

15  32.   Again, in direct violation of the prohibitions of General Order #8-8, the Taser

16       was used on Lindsay even though Lindsay was not offering active resistance

17       to or aggression towards Police Officers or others and posed no threat to

         himself.

18  33.   Also, in direct violation of General Order #8-8, the Taser was used on Lindsay

19       even though he was a passive subject. The sole justification for the use of the

20       Taser was Lindsay's perceived flight or fleeing, however, Lindsay was not

21       attempting to flee and was not under arrest at the time he was tasered the first

22       or second time.

23  34.   Additionally, and in direct violation of General Order #8-8, the Taser was used

         on Lindsay without consideration for the "severity of the offense committed

24       ...." because Lindsay had not committed an offense at the time he was tasered,

25       was not a suspect in any offense and was not under arrest or subject to arrest.

26

27

28

35. Lindsay was previously assaulted and battered by the Santa Paul Police Department and suffered serious injury as a result of the previous incident, and some same Police Officers were involved in this incident and were at least familiar with Lindsay based on that prior contact.

36. At the time of the *first* Tasering, there were no less than six police officers near Lindsay who had the present apparent ability to restrain Lindsay without use of a Taser. The Police Officers had other available means to restrain or subdue Lindsay, if restraint was even necessary and because of the number of Police Officers at the scene, there was an opportunity to use less force than a Taser but Police Officers refused to use such lesser force.

37. While Lindsay was subdued and on the ground, on his hands and knees, unable to comply with the order to roll over and put his hands behind his back, and while he was offering no resistance, and also while no less than six police officers stood surrounding Lindsay, police used the Taser on Lindsay a *second* time, thus inflicting additional pain and suffering even though he was not resisting.

38. When Lindsay was Tasered the *second* time, he was on the ground and could easily have been subdued with less force than a Taser, with no less than six officers present, surrounding Lindsay, thus making the use of the Taser unnecessary.

39. Once Lindsay was incapacitated and laying on the ground in contact with rain water, there was no reasonable need to apply a *second* charge of electricity to his person, particularly since he was no longer able to resist any action the police might have wished to take including placing him in restraints or handcuffs.

40. Further, the application of a second charge of electricity by means of the Taser constituted assault and battery.

41. The City of Santa Paula is liable for any actions of the Police Officers involved under the Doctrine of Respondeat Superior.

42. Lindsay suffered additional physical and emotional damages because he had previously been assaulted and battered by Police Officers Fogata and Cagnacci and had suffered serious and lasting physical harm from that previous assault

1   and battery, including the need for surgical repair and/or correction of the
2   injury.

43.   Lindsay was also in a susceptible condition in that he had additional surgery
3   to the site of the injury and was not fully recovered from that surgery.

4   44.   Lindsay filed a public entity claim in a timely manner and Santa Paula did not
5   act on it and claimed not to have received it but subsequently allowed Lindsay
6   to file a claim which has since been denied and this complaint is filed within
7   the statutory time limits for such actions. The public entity's Denial of said
   claim is attached hereto as Exhibit "B" and incorporated by reference herein.

8   45.   Lindsay is informed and believes that his physical condition and prior dealings
9   with the Santa Paula Police was known to some or all of the Police Officers
10   involved in the instant matter, and that their prior knowledge of Lindsay's
11   previous dealings with the Santa Paula Police Department caused the Police
12   Officers to use the Taser in an overly aggressive manner on Lindsay without
   justification and in direct contradiction of General Order #8-8.

13

14

15   **FIRST CLAIM FOR RELIEF**
16   **VIOLATIONS OF CIVIL RIGHTS UNDER COLOR OF LAW**
   **IN VIOLATION OF TITLE 42 UNITED STATES CODE, SECTION 1983**
17   **(All Defendants)**

18

19   *Every person who, under color of any statute, ordinance, regulation, custom, or*
20   *usage, of any State or Territory or the District of Columbia, subjects, or causes to be*
21   *subjected, any citizen of the United States or other person within the jurisdiction*
22   *thereof to the deprivation of any rights, privileges, or immunities secured by the*
23   *Constitution and laws, shall be liable to the party injured in an action at law, suit in*
24   *equity, or other proper proceeding for redress, except that in any action brought*
25   *against a judicial officer for an act or omission taken in such officer's judicial*
26   *capacity, injunctive relief shall not be granted unless a declaratory decree was*

27

28

*violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.*

(42 U.S.C. § 1983)

46. Lindsay incorporates herein by reference, as if fully and completely set forth, paragraphs 19 through 44 of the General Allegations as set forth above.

47. On or about December 9, 2006, at or about11:30 PM, Lindsay was in the convenience store portion of the Chevron gas station located at 983 E. Harvard Blvd., Santa Paula, California, 93060.

48. Lindsay attempted to purchase an alcoholic beverage, but the store clerk refused to sell him the beverage. Lindsay thereafter attempted to pay the bill of one or more fellow patrons which caused the clerk to call the 911 emergency number.

49. At no time did Lindsay act in a violent manner toward the clerk or any fellow patron, nor did Lindsay attempt to steal or remove any property from the convenience store.

50. For reasons unknown to Lindsay, the clerk in the convenience store called 911, but made no allegation that Lindsay was posing a threat or had acted in a violent manner, nor did the clerk asks Lindsay to leave the store.

51. Less than 10 minutes after the 911 call was received, Santa Paula Police arrived, deployed not less than 6 officers, even though there was no threat of violence, damage to property, or any indication that a crime had been or was going to be committed.

52. When Santa Paul Police arrived, Lindsay was already in the Taxi Cab that had brought him to the store and he was preparing to leave when the first Police vehicle arrived.

53. Lindsay is informed and believes and thereon alleges that he could have ordered the Taxi Cab to leave the premises once he saw the Police Officers arrive because he was not under arrest and was not obliged to remain.

54. Lindsay felt it was in his best interest to remain in the vehicle and straighten out any confusion over the situation and therefore remained at the scene and in the cab for a period of time.

55. Lindsay observed the Santa Paula Police enter the convenience store and apparently speak to the clerk and then exited the store and swarmed the cab where Lindsay was waiting calmly. Upon request, Lindsay exited the cab peacefully and spoke with police regarding the situation. Lindsay did not attempt to flee the scene nor did he refuse to obey the command of the Police to exit the cab.

56. When the Police Officers questioned Lindsay about the matter and told him that someone inside had called 911, Lindsay wanted to return to the store to clear up the matter.

57. Lindsay informed the Police Officers that he had been at his sister's wedding and had been drinking, and explained that this was the reason he was leaving in a Taxi Cab. Due to his prior contact with and previous lawsuits against the Santa Paula Police Department, one or more of the Police Officers recognized Lindsay and addressed him by his first name.

58. Police Officers told Lindsay that he could not return to the store and threatened him with the Taser. Lindsay is informed and believes that the threat was an attempt to intimidate him and to force him to be compliant, even though the Police Officers knew they had no lawful right to force his compliance, that he had been drinking and that they were in an area with flammable gasses and liquids present, thus making the use of the Taser extremely ill-advised.

59. Lindsay made no threat of violence, either overt or covert, toward the Police Officers or anyone else and clearly stated his intent to have the allegation against him straightened up.

60. Lindsay is informed and believes that nothing in the original 911 call suggested a violent situation or criminal act underway at the convenience store before Police arrived.

61. Police Officers used the Taser in close proximity to a working gas pump and against a subject they knew had been consuming alocholic beverages and therefore were in violation of General Order #8-8. The night in question was a rainy night and Lindsay was laying on the pavement in a puddle of water, in a gas station close to gas pumps, when police demanded that he roll over and put his hands behind his back.

62. Lindsay was not able to immediately comply and a **second** charge of electricity was given while at least six police officers stood nearby.

63. Use of the Taser under the circumstances of this case and under the environmental conditions prevailing at the time of the application and also the application of the **second** charge of electricity was not justified or justifiable and constituted police imposed punishment without due process or equal protection of the law.

64. The punishment suffered by Lindsay was inflicted without due process of law in that he had not been arrested, had not committed a crime, was not suspected of committing a crime, and was not a threat to anyone at the time the Taser was used against him and thus he was punished without due process of law and he was not allowed to confront his alleged accuser.  Rather, Police Officers, in what constituted a summary trial by police in the field, accused, tried and convicted Lindsay of unspecified charges and inflicted punishment on him.

///

65.     The actions of the Defendants therefore constitutes a deprivation of Lindsay's rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, and therefore deprivation of Civil Rights under Color of Law because the Police Officers were acting in an official capacity.

66.     Lindsay has suffered damages of more than $75,000.00 as will be shown according to the proofs at the time of trial.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF CIVIL RIGHTS UNDER CALIFORNIA LAW
### (All Defendants)

67.     Lindsay incorporates by reference, as if fully and completely set forth herein paragraphs 19 through 44 of the General Allegation and paragraphs 45 to 65 of the First Cause of Action as set forth above as if such allegations were fully and completely set forth herein.

68.     Lindsay was and has been deprived of his Civil Rights as such rights are set forth in the California Constitution Article I, Section 1 and 13 to wit:

*"All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."*

(California Constitution Article I, Section 1)

*"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation,*

*particularly describing the place to be searched and the persons and things to be seized."*

(California Constitution Article I, Section 13)

69. Lindsay has been deprived of his State Civil Rights under the aforesaid Constitutional provisions in that he was subjected to unnecessary and unreasonable cruelty by the fait and caprice of Police Officers of the Santa Paula Police Department.

70. As a direct and legal consequence of the actions of Santa Paula and the Police Officers of the Santa Paula Police Department, Lindsay has been deprived of and denied his State Civil Rights under Color of Law to be secure in his person and property from unreasonable seizure in that he was seized without just cause.

71. Lindsay suffered pain and severe shock to his body and nervous system when Police used a Taser to apply an electrical shock to his person when there were other and less painful and less dangerous means of restricting his motion.

72. Lindsay was not under arrest and hand not threatened Police or others with any violence but merely wanted the allegations made against him cleared up.

73. There were several police officers present and less forceful means was available to restrain Lindsay, if any restraint was actually necessary.

74. Lindsay could not consent to being Tasered while he lay on the wet pavement in proximity to flammable gases and/or liquids and was incapable of obeying commands because Police Officers had put him in a much more vulnerable position than when he was first Tasered.

75. Lindsay was not capable of resisting while he lay on the wet pavement in proximity to flammable gases and/or liquids in that he was not capable of understanding and obeying simple commands as a result of the *first* Tasering and the resulting pain and shock to his nervous system.

76.   The use of the Taser while Lindsay lay on the wet pavement in proximity to flammable gases was unwanted physical contact with his person that resulted in great pain and created an extremely dangerous situation where use of such force was unreasonable under the particular circumstances of that event.

77.   Use of such force, at the level applied to Lindsay as set forth herein, was unreasonable under the particular circumstances to both Lindsay and to the surrounding area and population.

78.   As a consequence of the application of electrical shock to Lindsay while he lay on the wet pavement, in proximity to gasoline pumps and flammable gasses and/or liquids was an unreasonable and unjustified use of force in excess of that necessary to achieve a reasonable goal of the police and therefore violated Lindsay's State Civil Rights.

79.   Lindsay has suffered actual physical harm, pain and suffering as a result of the conduct complained of herein and the amount is not yet fully known and in excess of the minimum jurisdiction of the court.

### THIRD CLAIM FOR RELIEF
### ASSAULT AND BATTERY
### (Defendants)

80.   Lindsay incorporates by reference, as if fully and completely set forth herein paragraphs 19 through 44 of the General Allegation as set forth above and all those allegations in paragraphs 45 to 65 of the First Claim for Relief and paragraphs 66 through 78 of the Second Claim for Relief.

81.   Defendants, Officers, and each of them, have deprived Lindsay of his Civil Rights under both the State and Federal Constitutions and have assaulted and

battered him in that they used undue force without the consent of Lindsay or the privilege of the law.

82. Lindsay was rendered incapable of giving consent when Defendants used a Taser to knock Lindsay to the ground and left him lying on wet pavement in the rain in close proximity to gasoline pumps and in violation of their own General Order #8-8.

83. Defendants then demanded that Lindsay role over and put his arms behind his back at a time when he was not capable of complying due to the shock and injury to his person.

84. Police then applied a *second* electrical shock to Lindsay as he lay stunned on the wet pavement.

85. Under no interpretation of the conduct of Lindsay was express or implied consent given to use the Taser while Lindsay was laying on the wet pavement in the rain near gasoline pumps given, either expressly or implicitly.

86. At the time the *second* electrical shock was administered to Lindsay, as he lay on the wet pavement, he posed no threat to the Police Officers or to any other person or any property and he was in fact subdued.

87. Numerous officers were present and their physical weight, size and numbers were sufficient to have accomplished the desired restraint of Lindsay without using electrical shock and without the resulting harm to Lindsay.

88. The conduct of Police Officers was intended to and did inflict sever pain and suffering on Lindsay and the conduct was malicious in that it was meant and intended by the Officers to cause injury to Lindsay. Furthermore, the conduct was despicable in that it was done with a willful and conscious disregard of the rights or safety of Lindsay in that Lindsay lay on wet pavement in the rain and was already subdued by the first electrical shock and further shock was not reasonably necessary, and less harmful means were available without threat to

the safety of the Officers.  The herein described conduct of the Police Officers was in violation of their departments General Order #8-8.

89.   The Conduct of Police Officers in the use of the Taser was oppressive and despicable conduct as described in paragraph 87 and also subjected Lindsay to cruel and unjust hardship in conscious disregard of Lindsay's rights to be free from unreasonable seizures of his person and/or property.  Furthermore, the conduct of Police Officers in the use of the Taser, as otherwise described herein, was malicious and oppressive in that the use was in close proximity to liquid and/or vaporous gasoline and such use posed a serious and real threat of harm not only to Lindsay but also to the surrounding community, but Police Officers nevertheless employed the Taser to shock Lindsay not only once but twice and at a time when there was no justification for the Taser to be used.

90.   The conduct of the Officers involved warrants the imposition of Punitive or Exemplary damages to punish the actual offending parties and to dissuade others similarly situated Police Officers from doing the same or similar acts.

91.   Punitive damages will be determined according to the proofs at the time of hearing on the matter following the determination of liability, but in no event will they be more than necessary to dissuade and punish given the appropriate financial information.

## FOURTH CLAIM FOR RELIEF
## NEGLIGENCE
### (All Defendants)

92.   Lindsay incorporates by reference, as if fully and completely set forth herein paragraphs 19 through 44 of the General Allegation as set forth above and all those allegations in paragraphs 45 to 65 of the First Claim for Relief and

paragraphs 66 through 78 of the Second Claim for Relief and paragraphs 79 through 90 of the Third Claim for Relief.

93. The Defendants owed Lindsay a duty to act so as not to place him in unreasonable danger and to protect his rights under the Constitution and Laws of the United States and the State of California, and also in their actions to refrain from unreasonably depriving Lindsay for his freedom of movement and association.

94. Defendants breached their duty to Lindsay and to others when they acted to deprived Lindsay of his rights and when they placed him at unreasonable risk of harm by the use of a Taser in violation of their own General Order #8-8.

95. The aforesaid breach and duty was the cause of the harm suffered by Lindsay.

96. Furthermore, the aforesaid breach of duty by the Police Officers was the direct, legal, and/or proximate cause of Lindsay's damages and/or harm as shown by the proofs but in no event less than $10,000,000.00.

97. Santa Paula was and is the employer and/or principal of the Police Officers at all times for all those alleged herein.

98. Santa Paula is liable for the actions of the Police Officers under the doctrine of Respondeat Superior and any liability that may attach to the Police Officers will also be the liability of Santa Paula.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**18.**
**VERIFIED COMPLAINT FOR CIVIL DAMAGES**

**WHEREFORE**: Lindsay prays judgment against the Defendants and each of them jointly and separately as follows:

**FIRST CLAIM OF RELIEF - VIOLATION OF CIVIL RIGHTS UNDER COLOR OF LAW (42 U.S.C. 1983)**

1.    Compensatory Damages:                          $1,500,000.00;

2.    Exemplary Damages (as to the Individual Defendants):  $10,000,000.00.

**SECOND CLAIM FOR RELIEF - VIOLATION OS STATE CIVIL RIGHTS**

3.    Compensatory Damages:                          $1,500,000.00;

4.    Exemplary Damages (as to the Individual Defendants):  $10,000,000.00.

**THIRD CLAIM FOR RELIEF - ASSAULT AND BATTERY**

5.    Compensatory Damages:                          $1,500,000.00;

6.    Exemplary Damages (as to the Individual Defendants):  $10,000,000.00.

**FOURTH CLAIM FOR RELIEF - NEGLIGENT**

1.    Compensatory Damages:                          $1,500,000.00.

Date:      May 2, 2008                Respectfully Submitted
THE BLATZ LAW FIRM

By:    Paul B. Blatz
Attorney for
Plaintiff, DAVID P. LINDSAY

1                 **VERIFICATION**

2 I, DAVID P. LINDSAY, hereby declare under penalty of perjury under the laws of

3

4 the State of California that I have read the above entitled VERIFIED COMPLAINT

5 FOR CIVIL DAMAGES and know the content thereof to be true and correct of my

6 own knowledge except as to those allegation made on information and belief and as

7

8 to such allegation I believe them to be true.

9 EXECUTED this 2nd day of May, 2008, in the City of Ojai, County of Ventura,

10 State of California.

11

12

13 *David P. Lindsay*

14 DAVID P. LINDSAY

15

16

17

18

19

20

21

22

23

24

25

26

27

28                               **20.**

**Exhibit A**

## SANTA PAULA POLICE DEPARTMENT GENERAL ORDER

| CHAPTER: | DATE OF ISSUE: | GO #: |
|---|---|---|
| POLICE PRACTICES & PROCEDURES | 08-31-07 | 8 - 8 |
| SUBJECT: | RESCINDS: | |
| Use of an Electronic Control Device (Taser) | G.O. #8-8 dated 06-07-06 | |

**I. PURPOSE:** This order establishes the guidelines for the use of an Electronic Control Device (ECD).

**II. POLICY:** In order to reduce the number of injuries sustained by police officers and suspects during violent confrontations an ECD may be used, when reasonable, to overcome resistance. Only employees who have successfully attended the user or instructor training course may carry and activate an ECD (1.3.4)

All sworn personnel authorized to use an ECD shall be re-trained on an annual basis.

**III. DEFINITION:** Electronic Control Device (ECD) – Commonly referred to as a Taser, a weapon primarily designed to disrupt a subject's sensory/motor nervous system by means of deploying electrical energy sufficient to cause uncontrolled muscle contractions and override an individual's voluntary motor responses.

**IV. SPECIFICATIONS:** Officers will carry the Taser X26E in an authorized holster capable of securely carrying this device. An additional spare probe cartridge may be carried with each device.

Officers may carry a personally-owned Taser provided it matches all specifications of this policy and that written notification is made to the Chief of Police through the Rangemaster.

**V. GENERAL CONSIDERATIONS:** A Taser is a non-lethal device that may be activated against subjects who are using active resistance or aggression towards officers, displaying or using aggression towards citizens and/or are a threat to themselves.

Tasers are included in the Department's use of force alternatives in an effort to reduce injuries to suspects and officers. The Taser is designed to reduce and/or eliminate the resistance of a violent or potentially violent suspect. Generally, a Taser should not be used on the same person during the same incident more than three times. An exception to this would be a lone officer where there was no other way to control a resisting subject. If the Taser is ineffective in controlling a violent or potentially violent suspect, officers should consider using other control methods.

A Taser shall not be used against passive subjects. Flight (fleeing) should not be the sole justification for use of a Taser. Severity of the offense (generally, a violent crime) and other circumstances should be considered before officers' use a Taser on a fleeing subject.

Officers must be mindful that this device immobilizes people quickly, but its effects are often short lived and officers should quickly try to secure the suspect before the immobilizing effects wear off when possible. It is important to emphasize that arrest teams can safely handle the subject during Taser applications. When a subject is especially violent or resistive, "handcuffing under power" can be a consideration. This means handcuffing while the Taser is activated to overcome resistance, and the activation terminated as soon as the subject is handcuffed in order to limit the number of separate activations needed to control a violent suspect.

**VI. DEPLOYMENT OF A TASER:** The Santa Paula Police Department shall maintain a sufficient number of Tasers to allow one unit to be available to the Special Response Team, and one unit for each

patrol vehicle. For patrol shift purposes only, a Taser Log Book shall be maintained for offic carrying this device. When not deployed, Tasers will be located in a safe location away from pub view/access within the Squad Room area.

When circumstances allow, the deploying officer shall announce the intention of activating t Taser (and/or sparking the Taser) so other officers on scene know it is going to be activated. This m also gain compliance from subjects whom the Taser is being activated against. In managing an incide in the field, a second Taser may be activated in the event of the first Taser fails to control the subject. activating the Taser the following elements will be considered:

a) Optimum deployment shall be within 7-15 feet.

b) The primary target area for activation of the Taser is center mass of the subject's bac Secondary consideration for activation is the subject's sides, front center mass and legs.

c) Officers shall not intentionally aim for the subject's head, neck or groin.

d) The Taser may also be used as a Drive Stun Device in limited circumstances:
   1) When used as a Drive Stun Device, an ECD should be activated against the subject muscle or nerve points (Front of torso, back of torso, sides, legs, arms, or clavicle).
   2) The subject must be actively resisting or fighting with officers to use a Taser as Drive Stun Device.
   3) A Taser as a Drive Stun Device is not as effective as when used in the probe mod Thus, use in this manner should be limited.

e) After each activation of a Taser (either in probe mode or Drive Stun), the activatin officer shall assess the effectiveness of the activation prior to any additional activation on the same subject. Repeated, prolonged, and/or continuous exposure(s) to the electrica discharge, without assessing the effects of each activation, is prohibited.

f) An "activation" is a single trigger pull and immediate release that results in up to a singl 5-second discharge of the device. The trigger shall not be held in the activation positio unless there are compelling circumstances.

g) After every activation of a Taser, a supervisor shall be notified as soon as it is safe to d so.

**VII. PROHIBITIONS:** A Taser shall not be used in the following circumstances:

a) As a coercion or intimidation device.

b) To stop suspects from swallowing potential evidence or to retrieve same.

c) Waking unconscious, non-responsive, or intoxicated subjects.

d) Individuals who are handcuffed unless they are actively resisting or exhibiting active aggression, and/or to prevent them from harming themselves or others.

e) Individuals in control of or operating a motor vehicle unless exigent circumstances exist.

f) In an area where there is a known presence of flammable liquids or gases.

g) To apprehend a known juvenile, pregnant woman or an elderly person, except when that person poses an immediate threat of bodily harm to officers, the public or to themselves.

h) The subject is in an area where they may fall from a significant height, unless there is a compelling need, such as potentially saving the life of another.

i) The subject is in an area where deep water may cause them to be submerged, unless there is a compelling need, such as potentially saving the life of another.

**VIII. PROBE MANAGEMENT:** Deployment of a Taser against a subject may cause minor puncture wounds and skin irritation. Upon successful activation of a Taser, officers may remove the probes from the subject's body or call EMS for probe removal. Officers will not attempt to remove probes from a suspect's face, neck (throat area, near carotid, etc), or groin.

Officers shall monitor the suspect for signs of medical distress throughout the booking proce and/or release from custody and notify appropriate medical personnel for aid as needed. (1.3.5)

Officers shall inform all other personnel responsible for custody of the suspect that a Taser w: used in their arrest and they should be monitored regularly. Photos shall be taken prior to and aft probe removal when possible, to include a photo with ruler or item (i.e., coin) to show scale of th wound site. Spent probes shall be disposed of by officers in a proper Biohazard sharps container.

**IX. USE OF FORCE REPORT:** A Taser is a use of force and all protocols for use of force inciden shall be followed in terms of reporting and documentation (See General Order #14-2, Use of Forc Investigations). (1.3.6:c)

**X. OFFICER EXPOSURE TO AN ECD:** As an officer, you may be faced with a subject threatenin or attempting to use an ECD against you. Avoidance techniques such as maintaining the 21-foc reactionary distance or protecting yourself by using a barricade or other protective device between yo and the device are options.

Your force option might include drawing or using your service weapon if you reasonably believ you are about to be rendered completely vulnerable. Deadly force should only be used when you ca: clearly justify it as the only option and then only if all decision-making criteria for the use of deadl: force are met.

**XI. TRAINING:** An officer is authorized to carry a Taser on-duty only following training by a certifie instructor and following demonstration of their proficiency. (1.3.10) While training will not requir direct exposure to an electrical discharge to each student, each training session must include observatior of a discharge to a subject(s) physically present or in training videos. All training shall include review of this policy and other applicable General Orders (i.e., Use of Less-Lethal Force and Use of Force Investigations).

**XII. MAINTAINANCE:** Only the Rangemaster or his designee is authorized to disassemble, dowr load data, or perform any servicing to a Taser device. A function check will be preformed at the beginning of each shift by the officer carrying the device. If the Taser fails the function check the Taser will be given to the Watch Commander and tagged for repair. If the battery indicator displays less than 20% a new battery pack shall be installed with the old battery turned over to the Rangemaster.

Stephen MacKinnon
Chief of Police

CALEA Standards:     1.3.4; 1.3.5; 1.3.6:c; 1.3.10

**Exhibit B**



# City of Santa Paula

970 Ventura Street • Santa Paula, California • Mailing Address: P.O. Box 569 • 93061 • Phone: (805) 525-4478 • Fax: (805) 525-6278

November 6, 2007

Thomas F. Brooks
Blatz, Pyfrom & Associates, L.L.P
206 North Signal Street, Suite G
Ojai, CA. 93023

RE:    David P. Lindsay, Claimant

Dear Mr. Brooks:

Take notice that the claim you presented to the City of Santa Paula on May 8,
2007 on behalf of David P. Lindsay, was rejected by Operation of Law.

## WARNING AS TO STATE CLAIMS

Subject to certain exceptions, such as federal causes of action, you have only six
(6) months from the date this notice was personally delivered or deposited in the
mail, to file a State court action on this claim, if the claim is a claim required to be
presented in accordance with Government Code §§ 900 et. seq.    (See
Government Code § 945.6.)

Sincerely,

*Kathleen J. Campbell*

Kathleen Campbell
Risk Manager

C:  Carl Warren & Co.