UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 18 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DAVID P. LINDSAY, an individual,<br><br>Plaintiff - Appellant,<br><br>v.<br><br>DANIEL KIERNAN, individually and in his representative capacity as a police officer,<br><br>Defendant - Appellee. | No. 09-55652<br><br>D.C. No. 2:08-cv-02925-RGK-JC<br>U.S. District Court for Central California, Los Angeles<br><br>MANDATE |

RECEIVED
CLERK, U.S. DISTRICT COURT

JUN 18 2010

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

The judgment of this Court, entered April 29, 2010, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

Molly C. Dwyer
Clerk of Court
/s/
Theresa Benitez
Deputy Clerk

**FILED**

**NOT FOR PUBLICATION**

APR 29 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| DAVID P. LINDSAY, an individual, | No. 09-55652 |
| --- | --- |
| Plaintiff - Appellant, | D.C. No. 2:08-cv-02925-RGK-JC |
| v. | |
| DANIEL KIERNAN, individually and in his representative capacity as a police officer, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Submitted April 7, 2010
Pasadena, California

Before: PREGERSON, BEEZER and THOMPSON, Circuit Judges.

At approximately 11:30 pm on December 9, 2006, the Santa Paula Police Department dispatched Defendant Officer Kiernan, along with several other police officers, to respond to a telephone call from a young woman working as a clerk at a

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

gas station convenience store. The clerk was concerned about an intoxicated man who insisted on buying Zima beer and refused to leave. When Officer Kiernan arrived at the scene, he saw Plaintiff David P. Lindsay ("Lindsay") getting out of his taxi, which was surrounded by four officers. Lindsay, a six foot, 220 pound, white male, was obviously intoxicated, angry, and belligerent.

The officers repeatedly told Lindsay to get back in the cab and leave the gas station. Lindsay refused and became increasingly hostile, yelling, "If you fuck with me, I'm telling you . . ." He insisted that the officers go with him to confront the young female clerk so she would sell him Zima beer. When Officer Kiernan grabbed Lindsay's arm to prevent him from re-entering the store and confronting the clerk, Lindsay broke free, barreled through the other officers, and walked quickly towards the store, yelling, "Let's get the fuck in there and clean this place up."

When Lindsay was close to the glass sliding door of the convenience store, Officer Kiernan asked Lindsay, "Okay you want the taser?" Lindsay stated, "I don't mind it," and continued walking towards the store. For the first time in his career, Officer Kiernan fired his taser in dart mode for the standard five second interval. Lindsay fell to the ground. The officers told him, "Put your hands behind your back. You'll get it one more time. Roll over. Roll over, hands behind your

2

back. You'll get it again." When Lindsay ignored these commands and attempted to get up, Officer Kiernan fired his taser a second time for four seconds. Lindsay was eventually handcuffed. Lindsay's physical resistance to the officers and the subsequent tasings occurred within a matter of seconds. The officers called the paramedics immediately. Lindsay was transported to a hospital, where he refused treatment. In his deposition, Lindsay testified that he did not experience any injuries that were "enough to make an issue over."

Lindsay sued Officer Kiernan in federal district court for using excessive force in violation of 42 U.S.C. § 1983 and committing various state law torts.[1] The district court granted Officer Kiernan's motion for summary judgment on qualified immunity and declined to exercise supplemental jurisdiction over Lindsay's state law claims. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

We review the district court's grant of summary judgement de novo and construe all disputed facts in favor of the non-moving party. See, e.g., Davis v. City of Las Vegas, 478 F.3d 1048, 1053 (9th Cir. 2007) (citation omitted); Bryan v. McPherson, 590 F.3d 767, 772 (9th Cir. 2009) (citation omitted).

---

[1] We deny Lindsay's request for judicial notice of a judgment in his favor in a 2001 civil rights case involving several Santa Paula police officers for excessive use of force.

3

II.

The threshold question in the qualified immunity analysis is whether a constitutional violation occurred. See Mattos v. Agarano, 590 F.3d 1082, 1086 (9th Cir. 2010) (citation omitted). To determine whether Officer Kiernan's conduct violated Lindsay's Fourth Amendment rights, we examine "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." Bryan, 590 F.3d at 772 (internal quotation marks and citation omitted). The objective reasonableness of an officer's conduct is evaluated by balancing the degree of force applied against the government's need to use that force. Id. (citation omitted).

The use of a taser in dart mode qualifies as an intermediate level of force,[2] which "must be justified by a strong government interest that *compels* the employment of such force." Id. at 774-75 (internal quotation marks and citation

---

[2] In Brooks v. City of Seattle, No. 08-35526, —F.3d—, 2010 WL 1135776 (9th Cir. filed March 26, 2010), we recently distinguished the use of a taser in dart mode from the use of the taser in drive-stun mode. We recognized that the use of a taser in dart mode qualifies as intermediate force, but held that a taser in drive-stun mode qualifies as less than intermediate force. Id. at 4932. Because Officer Kiernan used his taser in dart mode, Brooks does not apply.

4

omitted).³ To examine the government's interest in the use of force, this court considers (1) whether the suspect poses an immediate threat to the safety of the officers or others; (2) whether the suspect is actively resisting; and (3) the severity of the initial offense. Id. at 775 (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). Courts also may examine "the availability of alternative methods of capturing or subduing a suspect." Smith, 394 F.3d at 701 (citation omitted).

"The most important factor under Graham is whether the suspect posed an immediate threat to the safety of the officers or others." Bryan, 590 F.3d at 775 (internal quotation marks and citations omitted). Here, Lindsay's intoxicated state, increasing hostility, physical resistance, and repeated refusal to leave the gas station could have led a reasonable officer to believe that Lindsay posed an immediate threat to the safety of the officers and the safety of the young female convenience store clerk. See Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir. 2004) (holding that use of a taser gun was reasonable in a "difficult, tense, and

---

³ Lindsay fails to demonstrate on this record that deployment of a taser at a gas station "creates a substantial risk of causing death or serious bodily injury." Smith v. City of Hemet, 394 F.3d 689, 706 (9th Cir. 2005) (en banc). Accordingly, we conclude that Officer Kiernan used intermediate, not deadly, force against Lindsay.

uncertain" traffic stop where the plaintiff was "hostile, belligerent, and uncooperative").[4]

Moreover, it is undisputed that Lindsay, while heavily intoxicated, actively resisted the officers repeated verbal commands to leave the gas station, broke free from Officer Kiernan's grasp, and barreled through five officers to confront the young female convenience store clerk. Moreover, Lindsay ignored Officer Kiernan's warning that he would deploy the taser unless Lindsay complied with the officers' orders. Such conduct qualifies as more than minor resistance.[5] In addition, a reasonable officer could have concluded that Lindsay continued to actively resist arrest by attempting to get up after the first taser shot, despite officers' commands to stay down and submit to arrest.[6]

---

[4] Our en banc decision in Smith v. City of Hemet, 394 F.3d 689 (9th Cir. 2005) is not to the contrary. Unlike the plaintiff in Smith who was not physically threatening and eventually complied, Lindsay physically resisted the officers' attempts to make him leave the gas station and refused to comply with any of the officers' commands. Id. at 702.

[5] In Smith, we determined that the plaintiff, who ignored some of the officers' commands, only engaged in minor resistance because he did not attempt to run from the officers and physically resisted for only a short time. See 394 F.3d at 703. Here, Lindsay refused to halt or comply with any of the officers' commands until after he was tased twice.

[6] Lindsay's subjective motivation for getting up is irrelevant because we must consider whether Officer Kiernan's actions were *objectively* reasonable. Bryan, 590 F.3d at 772.

Given the volatile situation, Lindsay's refusal to comply with any of the officer's verbal commands, and his physical resistance despite the presence of multiple officers, Officer Kiernan could have reasonably believed that deploying his taser after a warning would be the least intrusive method of subduing Lindsay.[7] In any case, officers need not employ the "least intrusive degree of force possible." Bryan, 590 F.3d at 780 n.15 (internal quotation marks and citations omitted).

Although Lindsay's offenses were relatively minor misdemeanors, every other Graham factor suggests that Officer Kiernan had a strong interest in using intermediate force against Lindsay. Lindsay repeatedly refused to comply with officers' orders, physically resisted their attempts to make him leave the gas station, and invited Officer Kiernan to deploy his taser against him. Combined with Lindsay's hostility, belligerence, and intoxication, Officer Kiernan reasonably believed that intermediate force was required to protect the young female clerk and prevent a potentially violent physical altercation between Lindsay and the officers. Tasers are only justified under compelling circumstances such as these.

---

[7] Santa Paula Police Department General Order 8-8 permits use of a taser "against subjects who are using active resistance or aggression toward officers, displaying or using aggression towards citizens and /or are a threat to themselves."

Accordingly, we hold that Officer Kiernan's conduct did not violate Lindsay's Fourth Amendment rights.[8]

## II.

The district court did not err in granting Officer Kiernan summary judgment on Lindsay's only federal claim. Therefore, we do not disturb the district court's decision to decline to exercise supplemental jurisdiction over Lindsay's remaining state claims. See 28 U.S.C. § 1367(c)(3) (stating that district courts may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction").

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Officer Kiernan on the § 1983 claim and its dismissal of Lindsay's state law claims for lack of jurisdiction.

**AFFIRMED.**

---

[8] Because we hold that the Constitution was not violated, we need not proceed to the second prong of the qualified immunity analysis. See Mattos, 590 F.3d at 1086. Moreover, we need not address whether Lindsay's conviction for violation of Cal. Penal Code § 148(a)(1) bars his lawsuit.